IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theodes Works,<br><br>  Petitioner,<br><br>vs.<br><br>Dora B. Schriro, Director, ADC; Attorney General of the State of Arizona,<br><br>  Respondents. | No. CIV 06-1912-PHX-PGR (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, U.S. DISTRICT JUDGE:

Theodes Works filed a timely petition for writ of habeas corpus on July 15, 2006, challenging his conviction in Maricopa County Superior Court following a jury trial for possession of narcotic drugs for sale and the trial court's imposition of a 9.25 year prison term. He raises three grounds for habeas relief: (1) his Sixth Amendment right to counsel was violated because police officers questioned him without the presence of an attorney; (2) his Fourth Amendment right to be free from illegal searches and seizures was violated because police officers searched him without his consent; and (3) his constitutional right against self-incrimination was violated when certain non-*Mirandized* statements were admitted, as well as evidence seized as fruits of these statements. Respondents contend that the first and second grounds were not properly exhausted, and that the third ground is without merit. For the reasons stated below, the Court recommends that Works' petition be denied and dismissed with prejudice.

# BACKGROUND

The facts supporting Works' conviction, and the procedural history, are summarized in the court of appeals memorandum decision:

> The State charged Appellant by information with one count of possession of narcotic drugs for sale, a class two felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-3408(A)(2), (B)(2) (Supp. 2005). The State later amended the information to allege that Appellant had seven historical prior felony convictions.
>
> Before trial, Appellant sought to suppress various statements allegedly made by him and any evidence derived from those statements. He contended that the police had obtained the statements without providing *Miranda* warnings, and that the statements were involuntary.
>
> On December 19, 2003, the trial court held an evidentiary hearing on Appellant's motion to suppress. At the hearing, Officer Mario Leoni of the Phoenix Police Department testified that, at approximately 6:15 p.m. on March 30, 2001, he and another officer (Officer Golding) were conducting plain clothes surveillance in an unmarked car near Seventh Avenue and Cocopah, an area frequented by drug users and transients. Officer Leoni had "worked that neighborhood for several years," and he noted "that neighborhood for South Mountain Precinct, that's the busiest neighborhood that we have as far as criminal activity goes with drugs."
>
> The officers eventually focused their attention on Appellant because he was darting in and out of traffic and waving to get drivers' attention and flag vehicles down. Two or three times, a vehicle stopped and Appellant spoke with the driver or passenger and got into the vehicle. When Appellant entered the vehicles, Office Leoni could see him "from a little above the waist up," and observed Appellant and the person in the vehicle turning toward one another, talking, and moving their hands toward one another. The meetings lasted approximately ten to fifteen seconds. Based on the circumstances, the activity he had observed, and his experience, Officer Leoni believed that Appellant was involved in drug sales.
>
> After observing Appellant for approximately fifteen to twenty minutes, the officers decided to speak with him. Officer Leoni approached Appellant, showed Appellant a badge hanging from his neck and the flat badge in his wallet, identified himself as a police officer, and stated that he wanted to talk to Appellant. Appellant appeared nervous and asked the officer "what was wrong." Officer Leoni asked Appellant for identification, but Appellant turned very rapidly in the other direction, as though he was going to run. Officer Leoni grabbed Appellant by the hand and turned him around, and they both fell to the ground. The officer ordered Appellant to put his hands behind his back; Appellant said, "Okay, okay, you got me"; and the officer handcuffed Appellant behind his back. Officer Leoni asked Appellant why he had tried to run, and Appellant replied that the officers "knew what was going on."
>
> Officer Leoni stood Appellant up, and patted him down. Appellant was wearing a fanny pack hanging in front of his waist, and Officer Leoni asked

- 2 -

Appellant if he had "anything" on him that the officer should know about. Appellant replied that he had some heroin and a syringe. Officer Leoni asked to search the fanny pack and remove the drugs, and Appellant consented. Officer Golding removed the fanny pack from Appellant's waist. The officers found personal items, a syringe, and a pill bottle containing heroin inside the fanny pack. The officers placed appellant under arrest. Officer Leoni did not advise Appellant of his *Miranda* rights or remember anyone else doing so.

Appellant stated that he wanted to talk with Officer Leoni "to maybe help him out with the charges." Officer Leoni said that he would listen, and Appellant requested to be moved from the area because he was concerned that "people would know that he was talking to the police" and would label him as an informant.

Another officer transported Appellant to a parking lot several blocks away near Fifth Avenue and Buckeye east of Phoenix Memorial Hospital. At this second location, Officer Leoni spoke with Appellant while they were in the patrol car. However, when the officer ran a computer check to determine if Appellant had outstanding warrants, Appellant decided not to provide any information and stated that he "just wanted to take care of" his warrants and arrest. Nonetheless, Appellant later answered questions about the money found on his person.

Officer Leoni also testified that the police used no force on Appellant (other than the force used to stop Appellant from running), made no promises to Appellant, and used no coercion to get Appellant to speak.

On February 9, 2004, the court heard oral argument on Appellant's suppression motion. The court denied Appellant's motion in part by ruling that Appellant's second set of statements, those made after his arrest, could not be introduced in the State's case in chief, but could be used as rebuttal to impeach Appellant should he choose to testify.

(Doc. #11, Exh J at 3-7) (footnotes omitted).

On appeal, Works argued that Officer Leoni improperly questioned him "without the benefit of being read his rights under *Miranda v. Arizona* ... in violation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights" (*Id.*, Exh I at 8). He challenged the admissibility of his statements because the police failed to comply with *Miranda*, and because the statements were involuntary. He challenged the seizure of drugs from his person as fruits of his unconstitutionally obtained statements. The court of appeals affirmed Works' conviction and sentence. In doing so, the court determined that certain of Works' statements were made to police while in custody and in response to interrogation. In addition, the court of appeals concluded that the trial court erred in failing to suppress Works' statement that the officers

- 3 -

"knew what was going on," but that the error was harmless. In addition, the court ruled that the drugs seized as a result of his *Miranda*-violative statements were not required to be suppressed, because his statements were voluntary, citing *United States v. Patane*, 542 U.S. 630 (2004) (*Id*. at 10-18).

## EXHAUSTION OF REMEDIES

A state prisoner must exhaust his state remedies before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir.1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); *Tamalini v. Stewart*, 249 F.3d 895, 898 -99 (9th Cir. 2001). The exhaustion requirement will not be met where the Petitioner fails to fairly present his claims. *Roettgen*, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are available in state court, then the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *White v. Lewis*, 874 F.2d 599, 602-605 (9th Cir. 1989). The federal

1 court may decline to consider these claims unless the petitioner can demonstrate that a 2 miscarriage of justice would result, or establish cause for his noncompliance and actual 3 prejudice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman v. Thompson*, 501 U.S. 4 722, 750-51 (1991); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Wainwright v. Sykes*, 5 433 U.S. 72, 86 (1977); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

6       Further, a procedural default may occur when a Petitioner raises a claim in state court, 7 but the state court finds the claim to be defaulted on procedural grounds. *Coleman*, 501 U.S. 8 at 730-31. In such cases, federal habeas review is precluded if the state court opinion 9 contains a plain statement clearly and expressly relying on a procedural ground "that is both 10 'independent' of the merits of the federal claim and an 'adequate' basis for the court's 11 decision." *See Harris*, 489 U.S. at 260. A state procedural default ruling is "independent" 12 unless application of the bar depends on an antecedent ruling on the merits of the federal 13 claim. *See Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985); *Stewart v. Smith*, 536 U.S.856 14 (2002). A state's application of the bar is "adequate" if it is "'strictly or regularly followed.'" 15 *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 16 262-63 (1982)). In cases in which a state prisoner has defaulted his federal claims in state 17 court pursuant to an independent and adequate state procedural rule, just as in cases 18 involving defaulted claims that were not fairly presented, federal habeas review of the claims 19 is barred unless the prisoner can demonstrate a miscarriage of justice or cause and actual 20 prejudice to excuse the default. *See Coleman*, 501 U.S. at 750-51.

21       **DISCUSSION**

22       Respondents argue that Works' first and second grounds for habeas relief were not 23 fairly presented to the state court, and are therefore not exhausted, and because he has no 24 state remedies available were he to return to state court, they are procedurally defaulted. As 25 to his first ground, Works contends that his Sixth Amendment right to counsel was violated 26 because police officers questioned him without the presence of an attorney. Although Works 27 invoked the Sixth Amendment in challenging the admission of his statements on direct

28       - 5 -

review, he did not argue that questions asked *outside the presence of an attorney* violated his Sixth Amendment right to counsel. Instead he argued that Officer Leoni improperly questioned him without *Miranda* warnings in violation of his Fourth, Fifth, Sixth and Fourteenth Amendments. Because a return to state court would be futile, this ground is procedurally defaulted. *Teague*. He has not demonstrated any cause or prejudice to excuse the default. *Coleman*. Aside from the procedural obstacle, Works is also mistaken that he was entitled to counsel at any time prior to the initiation of judicial criminal proceedings. *See Kirby v. Illinois*, 406 U.S. 682 (1972).

Similarly, on direct review he presented his challenge to the seizure of drugs from his person as fruits of his unconstitutionally obtained statements, not as a warrantless search or one conducted without his consent. His second ground was therefore not fairly presented in state court, and because of the futility of his returning to state court, also procedurally defaulted. *Teague*. He has not demonstrated any cause or prejudice to excuse the default. *Coleman*. It also fails on the merits. It is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

In his third ground, Works contends that the *Miranda* violation required suppression of the fruits of those statements, the items seized from his fanny pack. The court of appeals applied clearly established Federal law enunciated by the Supreme Court in *Patane* in concluding that because Works' statements were voluntarily made, with "no indication that [Works] was threatened, intimidated, or given promises to induce him to speak," suppression of the contents of the fanny pack was not required. In addition, this factual determination is presumed to be correct, rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Works has made no such showing.

**IT IS THEREFORE RECOMMENDED** that Theodes Works' petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE** (Doc. #1).

- 6 -

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 31st day of May, 2007.

_____
David K. Duncan
United States Magistrate Judge

- 7 -